William BARE, Appellant,

v.

KANSAS CITY FEDERATION OF MUSICIANS LOCAL 34–627, Respondent.

No. WD 40122.

Missouri Court of Appeals, Western District.

Aug. 23, 1988.

C. Christian Kirley, Rose, Jackson, Brouillette & Shapiro, Kansas City, for appellant.

Sherman L. Gibson and Linda Scott Skinner, Overland Park, Kan., for respondent.

Before CLARK, P.J., and
LOWENSTEIN and FENNER, JJ.

CLARK, Presiding Judge.

Appellant sued respondent under a two count petition for breach of contract. The cause was tried to the court which entered judgment for defendant at the close of appellant's evidence. On this appeal, appellant contends the trial court erred in its finding because the judgment was against the weight of the evidence. Affirmed.

The evidence, considered most favorably to support appellant's cause, was as follows. Respondent union maintained offices at 1017 Washington in Kansas City. For reasons not disclosed in the evidence, and presumably on account of an urban renewal project, respondent was required to move from the property. Such displacement entitled respondent to relocation costs from government funds, disbursement of which is handled by the Central Relocation Agency, City of Kansas City, hereafter the Agency.

Generally, relocation costs involve moving expenses, but in respondent's case, the services of a cabinet maker-carpenter were required to remove shelving and to dismantle and reassemble a bar of considerable age. Appellant was contacted by the Agency and requested to submit a bid for the work. As specified, the bid was in two segments, $750.00 for removal of the shelves and $8225.00 for the work on the bar.

On April 12, 1985, appellant was notified by the Agency that the job was awarded to him. Appellant had previously inspected the property preparatory to entering his bid and, after the notice that he was to do the work, he returned on April 24, 1985 to coordinate his efforts with those of the moving contractor. From the first meeting on the subject with a representative of the Agency, appellant was informed that the

bar was in prospect of sale and his work to disassemble it might not be needed. This was the reason the bid was separated into two components.

On May 1, 1985, appellant came to the premises and, as directed by a representative of respondent, commenced work first on removal of the shelving. When that work was finished, appellant went to the lower level to begin work on dismantling the bar. That work had scarcely begun when respondent's representative instructed appellant to stop because a sale of the bar was anticipated. That work never resumed and, some time later, appellant was informed that the bar had been sold to a buyer who did not need to have it removed.

According to appellant, he had reserved time to do the work of dismantling the bar in reliance on the understanding he had with the Agency and with respondent and he was entitled to the profit he would have earned on the job. He therefore claimed the contract price, less expenses, as damages.

Some further details regarding payment of relocation expenses are pertinent. The expenses are payable to the displaced party, but are based on the various costs incurred. The Agency assists in the relocation, not only by supplying the funds, but also in locating the needed services. Payment is made by the Agency to the persons who provide the services, but only if such payment is approved and directed by the displaced party. The Agency makes no contract with and assumes no liability for payment to the persons providing moving and other relocation services. In this case, appellant acknowledges that he had no contract with the Agency and he makes no claim that his account is owed by the Agency. The issue is, did appellant prove the existence of a contract with respondent for removal and reassembly of the bar.

▉ To constitute a contract, there must be a mutual understanding of facts entering into the contract and nothing can be left to conjecture. *Chagnon v. Shampaine Industries, Inc.*, 412 S.W.2d 519, 526 (Mo.App.1967). A court may enforce a contract only if the offer and acceptance are sufficiently specific on terms of the contract to manifest the parties' assent to those terms. *Hyken v. Travelers Insurance Co.*, 678 S.W.2d 454, 458 (Mo.App. 1984). Whether a contract is made and, if so, what the contract is, depend upon what is actually said and done and not upon the understanding or supposition of one of the parties. *Revere Copper & Brass, Inc. v. Manufacturers' Metals & Chemicals, Inc.*, 662 S.W.2d 866, 869 (Mo.App.1983).

▉ The first problem with the asserted oral contract under which appellant claims his right to damages is uncertainty as to the contracting parties. The evidence is clear that appellant relies on the bid solicitation and bid acceptance by the Agency as the requisite offer and acceptance necessary to complete the agreement resulting in the contract. So far as appellant is concerned, however, those dealings were between appellant and the Agency, not between appellant and respondent. Appellant argues that respondent was bound because the Agency was acting as agent for respondent. The facts show otherwise. The Agency took the position that relocation benefits were payable only to the displaced party and no disbursement was made, even as to the payment appellant did receive for work on the shelving, until it was authorized by what amounted to an assignment by respondent. Moreover, there was no evidence of any grant of authority by respondent to the Agency to obligate respondent in the matter of contracting for services.

▉ Even were it to be assumed, for purposes of determining whether a contract was proved, that respondent permitted the Agency to act on respondent's behalf with apparent authority, there was no offer and acceptance on sufficiently specific terms to result in an enforceable contract. Appellant's evidence established that from the onset of his discussion with the Agency about the work to be done, he was aware removal of the bar was in doubt. Appellant knew respondent was attempting to sell the bar and if a sale were negotiated, the dismantling services would not be required. Thus, no binding contract

resulted when appellant was notified by the Agency that his bid had been accepted because acceptance was then still limited by conditional arrangements pending for sale of the bar.

Appellant introduced no evidence, beyond that concerning acceptance of his bid, of any firm engagement of his services to dismantle the bar expressed by anyone from the Agency or on behalf of respondent. There was no written contract or memorandum of understanding, apart from appellant's bid, and no testimony by appellant that any representative of respondent ever informed appellant that his services would be used to remove the bar. To the contrary, Ruel L. Joyce, the president of respondent, testified that he expressly told appellant as late as one week before the work commenced that removal of the bar was still tentative.

What appellant has relied on and continues to advance to support his claim was his own assumption that when he visited the premises on April 24, 1985, and again when he commenced work May 1, 1985, no one told him the bar was not to be removed and, from appellant's earlier bid and his preparations to do the work respondent should have known appellant was expecting to remove the bar as part of the job. Even discounting Ruel Joyce's testimony that he expressly informed appellant otherwise, this evidence fell far short of proving an express contract.

As the authorities cited above hold, the courts will not enforce a contract in which there is an absence of specific terms to which the parties have manifested their assent. The original agreement in this case was conditional and was recognized as such by the parties. Appellant relied on his own supposition that the conditional aspect had been removed and failed to secure any confirmation that his supposition was correct. The consequence is that appellant had no contract enforceable in this action.

■ It is also appropriate to note that the judgment is supportable on the additional ground that appellant offered no proof of damages. His pleaded theory of damages was that because of his contractual arrangement with respondent, he set aside two days time during which he was unavailable to work on other projects. There was, however, no proof of any other work available to engage appellant's time or any jobs appellant could not fill because of the supposed commitment to respondent. It was incumbent on appellant under this theory to prove with reasonable certainty the anticipated profits he would otherwise have realized on work for which he was not available. With no evidence on the subject at all, the trial court was not empowered to enter a judgment which would have rested entirely on speculation.

The judgment is affirmed.

All concur.